**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **J. GREGORY KENNEDY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 10-0475-WS-C** |
| | ) | |
| **BOLES INVESTMENT, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on the parties' dueling Motions for Judgment on the Pleadings (docs. 9, 31). The Motions have been extensively briefed, and are now ripe for disposition.

**I.      Relevant Factual and Procedural Background.[1]**

The relevant facts for purposes of the cross-Rule 12(c) Motions are largely uncontested. The parties have litigated this long-running feud for more than a half decade in at least three different fora. Indeed, the dispute's origins trace back to 2004, when plaintiff, J. Gregory Kennedy ("Kennedy"), sold certain beachfront property (the "Property") to defendant Boles Investment, Inc. ("BI").[2]

---

[1]      Because this matter is presented on Motions for Judgment on the Pleadings, the Court "must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001); *see also Cunningham v. District Attorney's Office for Escambia County*, 592 F.3d 1237, 1255 (11th Cir. 2010) (similar). In evaluating each side's respective Rule 12(c) Motion, the Court takes as true all well-pleaded factual allegations in the adversary's pleadings, and does not credit contravening assertions in the movant's pleadings. *See generally Chagnon v. Town of Shrewsbury*, 901 F. Supp. 32, 35 (D. Mass. 1995) ("When both parties move for judgment on the pleadings pursuant to F.R.C.P. 12(c), the Court must treat each motion as if the other had not been made and by this process determine whether any material issue of fact is presented by the pleadings.") (citation and internal quotation marks omitted).

[2]      The total purchase price of the Property was $3.7 million. BI paid Kennedy a down payment of $370,000, and borrowed the rest ($3.33 million) from Kennedy.

## A.    The Note and Guaranty Agreement.

On July 2, 2004, in connection with that real estate transaction, BI gave Kennedy a promissory note (the "Note") in the amount of $3,330,000, payable as follows: (i) BI would make monthly interest payments (at the rate of 6% per annum) on the principal from August 2004 through July 2009; and (ii) BI would make a balloon payment to Kennedy upon maturity of the Note in July 2009 covering the entire $3.33 million principal amount, plus any accrued and unpaid interest and charges.  (Complaint (doc. 1), Exh. A, ¶¶ 1-2.)  BI's indebtedness was secured by a vendor's lien on the Property in favor of Kennedy.  (*Id.*, ¶ 3.)  Of particular importance, the Note also provided that BI was entitled to "prepay this Note, in its entirety, including all interest and principal then due, upon payment of a penalty equal to five percent (5.0%) of the amount being prepaid."  (*Id.*, ¶ 7.)  Other relevant provisions were an attorney's fee clause, wherein BI agreed "to pay reasonable attorneys' fees and costs incurred by [Kennedy] in collecting or attempting to collect this Note, whether by suit or otherwise," and a late fee clause, under which BI agreed that any payment of interest or principal that was more than 10 days late "shall bear a late fee of ten percent (10%) of such payment."  (*Id.*, ¶¶ 6, 8.)

The Note was accompanied by an "Unlimited Continuing Guaranty Agreement" (the "Guaranty Agreement") executed by defendant Ian J. Boles ("Boles") for Kennedy's benefit on July 2, 2004.  The Guaranty Agreement specified that Boles "unconditionally and absolutely guarantees the due and punctual payment of all sums due under the Loan, the interest thereon and any other moneys due or which may become due thereunder."  (Complaint, Exh. B, ¶ 1.)  Boles agreed to be responsible not just for the principal amount of the loan, but also for "all interest, taxes, fees, charges, expenses, and attorney's fees chargeable to Borrower or incurred by Lender under this Guaranty."  (*Id.*)  Boles further agreed that if enforcement of the Guaranty Agreement became necessary, then he would "reimburse [Kennedy] for all expenses incurred, including reasonable attorney's fees, whether suit be brought or not."  (*Id.*, ¶ 7.)

## B.    The Failed Resale of the Property and the Ensuing State Court Action.

What happened next has been ably summarized by the Alabama Supreme Court in related proceedings as follows:

> "In April 2005, an individual named Rex Hall contracted with BI to purchase the property for nearly $16 million. … Boles told Kennedy that BI had entered into an agreement to sell the property [to Hall] and that BI planned to prepay the promissory note in the near future.  Boles testified that when he told Kennedy of

the agreement to sell the property, Kennedy became agitated and stated that he needed 'to make some more money out of that deal.' Boles further testified that Kennedy … said that 'if that doesn't happen or if you don't pay me, then I'm going to have to get my lawyers involved.'"

*Kennedy v. Boles Investments, Inc.*, 53 So.3d 60, 63 (Ala. 2010) ("*Kennedy II*").[3]

On June 30, 2005, counsel for BI and Boles notified Kennedy's counsel in writing that they had calculated the total payoff on the Note at $3,513,150, and requested that Kennedy's counsel "confirm, in writing, that the revised payoff is correct and notify [them] immediately with wiring instructions." *Id.* at 64. Later that same day, however, Kennedy's counsel notified counsel for BI and Boles that Kennedy had filed suit against them in state court and that "[u]ntil the issues addressed in the complaint are resolved, Mr. Kennedy will not accept any funds tendered to pay off the Promissory Note …." *Id.* In other words, Kennedy summarily rejected BI/Boles' tender of the full amount due and owing under the Note, even though that Note expressly provided a prepayment option.[4] Rather than accepting prepayment, as the Note required him to do, Kennedy took BI/Boles to court. Save for a brief interregnum last summer, the parties have been there ever since.

For nearly five years, Kennedy and BI/Boles waged a pitched battle in the Alabama state courts, litigating a barrage of claims and counterclaims that ultimately required not one but two trips to the Alabama Supreme Court. In January 2006, the Baldwin County Circuit Court granted summary judgment to BI and Boles on their claims for declaratory and injunctive relief.

---

[3]    The Court may consider facts found in *Kennedy II*, as well as the documents appended to the parties' briefs as exhibits, for Rule 12(c) purposes. *See, e.g., Santiago v. Bloise*, 741 F. Supp.2d 357, 361 (D. Mass. 2010) (court's review of Rule 12(c) motion is generally confined to complaint and answer, but may also include "facts susceptible to judicial notice," "documents the authenticity of which are not disputed by the parties," "documents central to the plaintiffs' claim," "documents sufficiently referred to in the complaint," and documents that "are part of the public record") (citations omitted); *Golden Hill Paugussett Tribe of Indians v. Rell*, 463 F. Supp.2d 192, 196 (D. Conn. 2006) (similar). Certainly, no party has objected to use of these materials in the Rule 12(c) inquiry.

[4]    Kennedy having refused to accept prepayment or to release his vendor's lien, and having filed a notice of *lis pendens* as to the Property in Baldwin County Probate Court, it comes as no surprise that "BI's sale of the property to Hall ultimately fell through." *Id.* at 65. "After the sale to Hall was unsuccessful, BI transferred the property to Boles." *Id.* In defendants' view, then, Kennedy's wrongful rejection of prepayment tender cost them more than $12 million in unrealized profit on the failed Hall deal.

At that time, the state court ordered Kennedy "to remove the *lis pendens* with respect to the property and enjoined Kennedy from taking any further actions to prevent BI or Boles from selling the property." *Id.* at 66. The Alabama Supreme Court affirmed that January 2006 judgment without opinion on February 15, 2008. *See Kennedy v. Boles Inv. Inc.*, 28 So.3d 37 (Ala. 2008) (table) ("*Kennedy I*").

Undeterred by the February 2008 Alabama Supreme Court ruling, Kennedy amended his state court complaint to add claims that BI had breached the Note by failing to make required monthly interest payments and that Boles had breached the Guaranty Agreement in the same manner. Those claims were tried along with BI/Boles' counterclaims for money damages in a two-day bench trial in Baldwin County Circuit Court in October 2008. On November 3, 2008, the trial court entered judgment in favor of BI and Boles, and against Kennedy, in the amount of $3,650,000. *See Kennedy II*, 53 So.3d at 67. Kennedy again appealed. On March 12, 2010, the Alabama Supreme Court affirmed the trial court's judgment.[5] In so doing, the Court made the following salient determinations: (i) "BI owed no interest payments to Kennedy after Kennedy rejected BI's pre-payment tender"; (ii) "Kennedy breached the note by rejecting BI's prepayment tender"; and (iii) "we cannot say that the trial court's award … of $3.65 million to compensate BI and Boles for the loss of the resale value of the property as a consequence of Kennedy's breach of the promissory note is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence." *Id.* at 70, 71, 75. Near the conclusion of its March 12 Order, the Alabama Supreme Court indicated in a footnote as follows: "[W]e note that under the trial court's rationale BI and Boles remain liable on the promissory note. … Kennedy is not entitled on this record to a judgment on the note. Whether future events might warrant such relief is obviously a question not before us." *Id.* at 74 n.6. Those "future events" have now come to pass.

> ### C. The Unpaid Note and State Court Judgment.

As discussed *supra*, the Note was structured in such a way that BI/Boles were to make only monthly interest payments from August 2004 through July 2009, then make a balloon

---

[5]     Kennedy petitioned the Alabama Supreme Court for rehearing; however, that application was overruled on June 25, 2010. *Id.* at 75. Barely two months later, Kennedy filed his Complaint (doc. 1) in this District Court.

payment for the entire $3.33 million principal amount on July 2, 2009.  After Kennedy rejected BI/Boles' tender of prepayment in June 2005, BI/Boles continued making monthly interest payments through late 2006, although some of those payments were made directly to the state court clerk's office.  *See Kennedy II*, 53 So.3d at 64-65.[6]  But BI/Boles did not make the $3.33 million balloon payment in July 2009.  (Doc. 1, ¶ 10.)[7]  That omission -- which occurred well <u>after</u> entry of the November 2008 judgment in the state court litigation (and therefore was not presented to or decided by the state courts) -- is the 800 lb. gorilla that prompted Kennedy to hale BI and Boles back into court, though this time he elected a federal forum rather than the state forum Kennedy chose for the first round of litigation.[8]  Kennedy also unsuccessfully filed for bankruptcy protection in an effort to prevent BI/Boles from enforcing the state court judgment.

At present, BI/Boles have not collected on their $3.65 million judgment from the state court action, with the exception of a supersedeas bond in the amount of $810,625, which they obtained in July 2010 after the state court appeal concluded.  The state court judgment accrues interest at the statutory rate of 12% under Alabama law.  (Doc. 1, ¶ 11.)[9]

---

[6]     The Alabama courts ultimately found, however, that BI/Boles were not liable for making those interest payments.  The trial court awarded all accrued interest payments held by the clerk's office to BI/Boles.  *Id.* at 69.  On appeal, the Alabama Supreme Court affirmed the trial court's findings that "BI and Boles properly tendered prepayment of the note and that that tender terminated BI's interest-payment obligation.  If BI properly tendered prepayment, BI did not breach the note and Boles did not breach his guaranty to pay BI's obligation on the note." *Id.* at 68-69.  The Alabama Supreme Court opined that "the trial court did not err in awarding the interest payments to BI and Boles." *Id.* at 71.

[7]     Defendants readily concede as much.  Indeed, they state in their brief in support of their Rule 12(c) motion that "BI did not pay Kennedy, nor did Boles" when the Note matured. (Doc. 10, at 7.)

[8]     Federal subject-matter jurisdiction over this matter is proper under the diversity provisions of 28 U.S.C. § 1332, inasmuch as Kennedy is of diverse citizenship from both Boles and BI, and the amount in controversy, exclusive of interest and costs, plainly exceeds $75,000. (Doc. 1, ¶¶ 1-4; doc. 6, ¶¶ 2-3.)

[9]     *See* Ala. Code § 8-8-10 ("Judgments for the payment of money, other than costs, if based upon a contract action, bear interest from the day of the cause of action, at the same rate of interest as stated in said contract; all other judgments shall bear interest at the rate of 12 percent per annum …."); *Jones v. Regions Bank*, 25 So.3d 427, 439 (Ala. 2009) ("Postjudgment interest begins to accrue on the date the trial court entered its judgment.").

### D.       The Pleadings.

According to the Complaint, Kennedy filed this action "to determine the amount owing between the parties taking into account, on the one hand, the $3,650,000.00 judgment and interest thereon, and, on the other hand, the Promissory Note in the principal amount of $3,330,000.00 owed Plaintiff Kennedy by Defendant BII and guaranteed by Defendant Ian Boles." (Doc. 1, ¶ 9.) In a nutshell, Kennedy maintains that BI/Boles breached the Note and Guaranty Agreement by not paying off the principal upon maturity, and that Kennedy is entitled to offset the sums owed him by BI/Boles against the state court judgment they hold against him.

The fact allegations of the pleadings are critical in evaluating the parties' competing motions for judgment on the pleadings. In his Complaint (doc. 1), Kennedy alleges that BI/Boles did not make the $3.33 million balloon payment when the Note matured on July 2, 2009, and have made no payments since then. (Doc. 1, ¶ 10.) The Complaint cites the Note's provisions calling for late fees of 10%, plus reasonable attorney's fees and costs, plus interest in the amount of 6%, in the event of nonpayment by BI/Boles. (*Id.*) According to the Complaint, on March 19, 2010, Kennedy "unconditionally tendered in satisfaction of the judgment cancellation of the Note and a cash sum of $159,565.04 to Defendants. This tender was rejected." (*Id.* ¶ 12.) Four months later, on July 16, 2010, BI/Boles sent a written demand to Kennedy wherein they "demanded $252,575.00 to satisfy the judgment," which sum was apparently calculated by taking the $3.65 million judgment, adding accrued post-judgment interest under Alabama law, subtracting the $810,625 supersedeas bond, and subtracting the $3.33 million face amount of the Note. (*Id.*, ¶ 14.)[10] The Complaint alleges that Kennedy rejected that demand because he wanted a credit against the state court judgment not only for the $3.33 million principal due under the Note, but also for a $330,000 contractual late fee, some $142,000 in accrued contractual interest, and reasonable attorney's fees. (*Id.*, ¶ 15.) Because the parties could not or would not agree on what (if any) enhancements or adjustments to the $3.33 million payment were appropriate, Kennedy proceeded to file suit against BI/Boles demanding everything he might conceivably be owed under the Note and Guaranty Agreement. BI/Boles responded in

---

[10]       The difference between these March 19 and June 16 offers/demands was less than $100,000, a relative pittance given the $3-million-plus figures involved.

kind by adopting an equally absolutist, extreme position, to-wit: That they owe Kennedy nothing under either contract.[11]

From even close inspection of the Complaint, it is unclear exactly what causes of action Kennedy is bringing against BI and Boles. This much is certain: He seeks a money judgment under the Note and Guaranty Agreement for the principal amount of the Note, plus late fees, interest, and reasonable attorney's fees. (Doc. 1, ¶ 15.) However, rather than requesting judgment for that entire amount (whose value he calculates at greater than $3.8 million), Kennedy solely "demands judgment against Defendants in the amount of $361,748.28" (*id.* at 3). Apparently, Kennedy would have this Court setoff the state court judgment BI and Boles have obtained against Kennedy, as well as the amounts that BI/Boles recovered from Kennedy via supersedeas bond, from the money judgment he seeks here; however, Kennedy identifies no cognizable legal cause of action under which this Court could do so.[12]

In their Amended Answer (doc. 8), BI and Boles acknowledge the authenticity of the Note and the Guaranty Agreement, but deny any indebtedness to Kennedy under those instruments. (Doc. 8, ¶¶ 6, 9, 10.) Defendants further admit that "Plaintiff has not been paid" under either the Note or the Guaranty Agreement. (*Id.*, ¶ 10.) Significantly, BI and Boles concede that in April 2010 they "offered to 'pay' the note by crediting the principal amount of

---

[11]     This outcome has required expenditure of no small amount of resources for the parties, this Court, the Bankruptcy Court (where plaintiff sought refuge from the state court judgment), and so on. Remarkably, the above history reflects that the parties were at one time in agreement that the balance due under the Note should be offset against the state court judgment in some way, yet they could not agree on relatively minor add-ons and adjustments, as a result of which they scuttled their negotiations altogether and resumed their scorched-earth litigation tactics, to the detriment of all. By launching another round of full-bore litigation last year when settlement appeared readily achievable, the parties embarked on a path that has likely cost them far more than the spread between their competing settlement proposals of March and July 2010.

[12]     If Kennedy is looking to obtain relief from the state court judgment, or to use the judgment he seeks in this case as a "credit" or "offset" from the existing state court judgment, it may have been more efficient to file this lawsuit in state court, where the parties have already spent the last five years and from whence the judgment in question emanated. At any rate, Kennedy does not explain how he would have this Court ascertain whether the state court judgment is or is not properly satisfied by the money judgment he seeks in this case.

the note against Defendants' judgment," but that Kennedy "rejected this offer." (*Id.*)[13] BI/Boles' pleading also includes admissions that Kennedy offered to cancel the vendor's lien, return the Note, and pay the sum of $159,565.04 to BI/Boles in March 2010 in satisfaction of the judgment, but that BI/Boles refused to accept same. (*Id.*, ¶ 12.) Defendants admit that they received the $810,625 supersedeas bond proceeds on July 13, 2010 in partial satisfaction of their judgment against Kennedy. (*Id.*, ¶¶ 13, 15.) Finally, the Amended Answer includes an admission that BI/Boles requested in July 2010 that Kennedy pay $252,575 to resolve the matter, which sum equates to the state court judgment, plus interest on such judgment, minus the supersedeas bond credit, and minus the principal amount of the Note. (*Id.*, ¶ 14.) That proposal was rejected. Now defendants deny owing plaintiff a penny of that $3.33 million sum that they had offered to credit him just last summer.

## II. Analysis.

### A. Legal Standard for Judgment on the Pleadings.

In this Circuit, "[j]udgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. District Attorney's Office for Escambia County*, 592 F.3d 1237, 1255 (11th Cir. 2010) (citation omitted).[14] The general rule is

---

[13] Defendants reinforce this admission in their Rule 12(c) briefing, wherein they state that "[a]fter the Alabama Supreme Court affirmed the judgment against Kennedy, BI and Boles offered to accept the canceled promissory note as partial payment on the judgment." (Doc. 10, at 8.) According to defendants, that offer fizzled because the parties could not agree on whether to credit a late fee and interest, in addition to principal. (*Id.*) As a result of said inability to agree on the "add-ons" to the Note, BI/Boles state that they "are no longer willing to accept the note and will insist on Kennedy's paying the judgment in cash." (*Id.*) Defendants make no apologies over having "changed their position" (doc. 36, at 25), even though the effect of that flip-flop has been to create and multiply proceedings that never need have occurred. Such intransigence (by both sides) over a matter that appeared capable of being fully compromised is the root cause of this lawsuit.

[14] *See also Palmer & Cay, Inc. v. Marsh & McLennan Companies, Inc.*, 404 F.3d 1297, 1303 (11th Cir. 2005) ("Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.") (citations omitted); *J.M. Blythe Motor Lines Corp. v. Blalock*, 310 F.2d 77, 78-79 (5th Cir. 1962) ("A motion for a judgment on the pleadings must be sustained where the undisputed facts appearing in the pleadings, supplemented by any facts of which the court will take judicial notice, show that no relief can be granted.").

that courts "will not consider matters outside the pleadings when passing on a Rule 12(c) motion." *Horsley v. Feldt*, 304 F.3d 1125, 1136 n.6 (11th Cir. 2002).

The limited purposes and obvious utility of motions for judgment on the pleadings were aptly summarized by one federal court as follows: "Judgment on the pleadings is, of course, not lightly to be given. On the other hand, litigants should not be required to go through the full and elaborate process of trial of issues when there is a dominating legal principle governing liability which is dispositive of the case without the necessity of trial." *Moss v. School Dist. of Norristown*, 33 F.R.D. 518, 519 (E.D. Pa. 1963).[15] This case is ideally suited for disposition via Rule 12(c), inasmuch as the relevant facts are undisputed and there are purely legal questions remaining as to liability that can be resolved now, thereby disposing of at least portions of the case without the necessity of trial.

### B.  Enforceability of the Note.

The parties' initial battleground is whether BI/Boles remain indebted to Kennedy pursuant to the Note at all. It is undisputed that, back in July 2004, BI promised to pay (and Boles promised to guaranty) the principal amount of the Note (which equated to $3,330,000), plus all accrued and unpaid interest and charges, to Kennedy on the maturity date of July 2, 2009. It is likewise undisputed that BI and Boles never paid Kennedy any of that amount. Moreover, the parties agree that the Note provided that (i) past due payments were subject to a late fee of 10%, and (ii) Kennedy was entitled to recover reasonable attorney's fees and costs incurred in collecting the Note. Prior to commencement of this action, BI/Boles offered to accept the cancelled Note as payment towards the outstanding state court judgment against Kennedy. Yet defendants have now made a complete about-face, as they insist in this litigation that they owe Kennedy nothing on the Note or Guaranty Agreement. Not surprisingly, Kennedy opposes BI/Boles' stance.

---

[15]  *See also Scranton Times, L.P. v. Wilkes-Barre Pub. Co.*, 2009 WL 3100963, *2 (M.D. Pa. Sept. 23, 2009) ("A court should only grant a motion for judgment on the pleadings if it is clear that the merits of the controversy can be fully and fairly decided in this summary manner."); *Ulen Contracting Corp. v. Tri-County Elec. Co-op.*, 1 F.R.D. 284, 285 (W.D. Mich. 1940) ("The obvious purpose of Rule 12(c) … is to save time and expense in cases wherein the ultimate facts are not in dispute.").

## 1.     *The Balloon Payment.*

BI/Boles' assertion that they do not have to pay Kennedy a dime on the Note is rooted in Kennedy's breach of the Note in June 2005, when he refused to accept the prepayment tendered by BI/Boles.  In that regard, defendants are correct that the Note specifically conferred upon BI the right to "prepay this Note, in its entirety, including all interest and principal then due."  (Doc. 1, Exh. A, ¶ 7.)  Defendants are also correct that it has been conclusively litigated and determined in state court that "Kennedy breached the note by rejecting BI's prepayment tender." *Kennedy II*, 53 So.3d at 71.  That issue cannot and will not be revisited here.

Where BI/Boles' position breaks down, however, is in their reckless leap from the foregoing facts to the conclusion that Kennedy's refusal to accept the tendered prepayment in June 2005 conclusively terminated BI/Boles' obligation to repay the principal on the Note upon its maturity in July 2009.  Case authorities and treatises are legion for the proposition that a debtor whose tender is refused is <u>not</u> thereby relieved from liability for the principal amount of the debt.  *See, e.g., McCalley v. Otey*, 8 So. 157, 159 (Ala. 1890) ("A tender refused does not operate to discharge the debtor from the debt ...."); *Public Nat'l Life Ins. Co. v. Highsmith*, 256 So.2d 912, 918 (Ala.Civ.App. 1971) ("a mere tender, though of the whole amount due, when unaccepted, does not operate to extinguish or satisfy the claim") (citations omitted).[16]  Also problematic for BI/Boles is the state court's ruling cutting against their position.  *See Kennedy II*,

---

[16]     *See also Haberman v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 401, 408 (5th Cir. 1955) ("In the case of an obligation to pay money, as in the present case, a tender does not discharge the debt ...."); *Malan v. Tipton*, 247 P.3d 1223, 1228 (Or. 2011) (recognizing that at common law, if the debtor tenders payment and the creditor does not accept it, the debtor is not relieved "from liability for the debt itself"); *State v. Lex Associates*, 730 A.2d 38, 48 (Conn. 1999) ("Refusal of a tender of payment ... does not discharge a debt ...."); *Guaranty Bank v. Thompson*, 632 S.W.2d 338, 340 (Tex. 1982) (debtor's tender of sums due, and creditor's refusal of same, does not relieve debtor "from liability for the principal outstanding debt"); *Kellos v. Parker-Sharpe, Inc.*, 263 S.E.2d 138, 141 n.3 (Ga. 1980) ("A creditor's refusal to accept a proper tender does not extinguish the claim."); 28 *Williston on Contracts*, § 72:45 (4th ed.) ("A cause of action on a money debt is not barred by a prior tender ...."); 13 *Corbin on Contracts*, § 67.6 (rev. ed.) ("the creditor's refusal to accept the money so tendered does not operate as a discharge of the debt").

53 So.3d at 74 n.6 ("we note that under the trial court's rationale BI and Boles remain liable on the promissory note").[17]

Notwithstanding this wall of adverse precedent (and their own acknowledgment in related proceedings that they remain indebted to Kennedy for the Note's principal amount),[18] BI and Boles now assert that they owe Kennedy nothing under the Note. In particular, BI/Boles argue that because Kennedy breached the Note by refusing prepayment, they are excused from all further performance. Such half-hearted reasoning is not persuasive. To be sure, Alabama courts recognize the general proposition that, if one party has breached a contract, the other party may be excused from performance if he repudiates the agreement. *See, e.g., Edwards v. Allied Home Mortg. Capital Corp.*, 962 So.2d 194, 207 (Ala. 2007) ("If the defaulting party materially

---

[17]     No party has suggested that this observation by the Alabama Supreme Court operates as collateral estoppel / issue preclusion in this case, nor could such an argument reasonably be maintained. The doctrine's rigorous requirements are plainly not satisfied here. *See, e.g., Ex parte Flexible Products Co.*, 915 So.2d 34, 45 (Ala. 2005) (noting that collateral estoppel can only be used if three elements are present: "(1) The issue must be identical to the one involved in the previous suit; (2) the issue must have been actually litigated in the prior action; and, (3) the resolution of the issue must have been necessary to the prior judgment.") (citations omitted). There is no indication that BI/Boles' liability (or lack thereof) on the Note at maturity was actually litigated in state court, much less that the resolution of that issue was necessary to the underlying judgment; rather, it merely appears that the state trial court reasoned that BI/Boles remained liable for the principal amount of the Note in calculating the amount of the supersedeas bond to impose against Kennedy on appeal. Simply put, whether BI/Boles would be indebted on the Note after it matured was neither presented nor necessarily decided in that case because the maturity of the Note had not yet happened, and no one knew at that time whether BI/Boles would or would not make the July 2009 payment.

[18]     Such concessions include the following: (i) BI/Boles expressed willingness in March 2010 to accept the canceled Note as partial payment of the state court judgment; (ii) in a January 2009 state court hearing, BI/Boles' counsel represented to the court that they "don't take any issue" with the premise that "there is a 3.65 million dollar judgment against [Kennedy], but that Mr. Boles still owes Greg Kennedy 3.3 million dollars" (doc. 32, Exh. 2, at 4-5); and (iii) a letter from BI/Boles' counsel to the state court trial judge in February 2009 reflects BI/Boles' understanding that they remain liable to Kennedy on the Note (doc. 32, Exh. 3). Even in this case, BI/Boles begrudgingly admit that the *McCalley* line of authorities "may create" an exception to the rule that a breach excuses future performance, inasmuch as "where the breach consists of a creditor's refusing a tender, the debtor remains obligated to pay the principal." (Doc. 36, at 2.) Given this context, BI/Boles' litigation posture that they owe no principal on the Note is not easy to reconcile with fundamental requirements that litigants proceed in good faith and avoid multiplying proceedings for improper purposes.

breaches its duties, the injured party may repudiate the agreement and not perform prospectively" or "may elect to continue the contract and retain its economic benefits"). But there is no indication, and no reason to believe, that BI/Boles ever repudiated the Note. Certainly, they have retained the Note's benefits (*i.e.*, the $3.33 million that Kennedy loaned BI), so they are hard-pressed to explain, as a matter of law or equity, why they should be excused from bearing its burdens.[19] More importantly, BI/Boles have not pointed to a single authority in which any court has held in any circumstances that a debtor whose tender of prepayment is refused by the creditor is thereby excused from repaying the loan. *McCalley* and its progeny exhibit a deeply entrenched common-law rule to the contrary.[20]

In short, based on uncontested facts as alleged in the pleadings and confirmed by both parties in their briefs, the Court finds that defendants remained liable to repay the principal on the July 2004 promissory note even after plaintiff rejected tender in June 2005. The Court

---

[19] *See generally DeVenney v. Hill*, 918 So.2d 106, 114 n.11 (Ala. 2005) ("A party cannot reap the benefits of a contract, yet seek to avoid the burdens of performing his obligations under the terms of the contract."); *Smith v. Edward M. Thompson Agency, Inc.*, 430 So.2d 859, 862 (Ala. 1983) ("A party who accepts the benefits of a contract cannot escape its burdens.").

[20] BI/Boles endeavor to distinguish these authorities by asserting that the Note in this case included a prepayment clause. But they do not point to any language in those cases demonstrating whether the contracts at issue did or did not have prepayment clauses, so the distinction championed by defendants may be illusory. Furthermore, from a conceptual standpoint, this distinction appears devoid of analytical significance. Consider a hypothetical Note A and Note B. Note A states that the debtor must pay the creditor on the maturity date. Note B states that the debtor must pay the creditor on the maturity date, but may pay early. How is the creditor's refusal to accept tender on Note A at maturity different (from a breach standpoint) than the creditor's refusal to accept tender on Note B prior to maturity? Either way, the creditor is effectively preventing the debtor from performing and could be convincingly deemed in breach. *See generally Still v. Plaza Marina Commercial Corp.*, 98 Cal.Rptr. 414, 417 (Cal.App. 5 Dist. 1971) ("When properly made, [a tender] has the effect of putting the other party in default if he refuses to accept it.") (citations omitted); *Green, Inc. v. Smith*, 317 N.E.2d 227, 233 (Ohio App. 4 Dist. 1974) (noting that a purpose of tender is to put the opposing party in default). Why should the debtor in the Note B scenario be relieved of all obligation to repay principal if (as is crystal clear under the law) the debtor in Note A is not? BI/Boles have not answered this question satisfactorily. The ultimate point here is a simple one: Hornbook law provides that a debtor whose tender is rejected is not thereby relieved of the obligation to pay the debt. BI/Boles identify neither on-point decisional authority nor compelling reasoning to deviate from that well-settled principle here, merely because the Note at issue in this case included a prepayment provision.

further finds based on undisputed facts that defendants' contractual obligation to make the $3.33 million balloon payment matured in July 2009 and that defendants have never paid it. As such, plaintiff is entitled to a judgment on the pleadings against defendants for the $3,330,000 principal amount that remains due and owing on the promissory note.

### 2. Late Fees, Interest and Attorneys' Fees.

Of course, Kennedy does not simply want BI/Boles to pay the principal amount of the Note.[21] Rather, he seeks a judgment holding BI/Boles liable for three additional categories of payments, to-wit: (i) a 10% late fee, which the Note specifies is owed by the borrower as to "[a]ny payment of interest or principal … that is not paid on or before ten (10) days from such payment's due date" (doc. 1, Exh. A, ¶ 8); (ii) the "reasonable attorneys' fees and costs" that Kennedy has incurred "in collecting or attempting to collect on this Note" (*id.*, ¶ 6); and (iii) prejudgment interest accruing at the rate of 6%.[22] Plaintiff reasons that these ancillary obligations flow directly from BI/Boles' failure to make the $3.33 million principal payment in July 2009 as required by the Note and Guaranty Agreement. Because the Note specifically provides for recovery of attorney's fees and a 10% late fee in the event of such a borrower default, and because Alabama law specifically provides for award of prejudgment interest in breach of contract cases where damages are a sum certain, Kennedy maintains that he is entitled to these types of damages as a matter of law.

---

[21] If that were all the parties were disputing, it seems highly improbable that, notwithstanding BI/Boles' perfunctory objection to repayment of principal, this case would have come into existence. At its core, the parties' disagreement centers on BI/Boles' liability to Kennedy for various contractual add-ons, and whether and to what extent the judgments offset, rather than any *bona fide* dispute over liability for principal.

[22] The Note did not expressly provide for prejudgment interest; however, Kennedy relies on well-settled principles of Alabama law authorizing such an award. *See, e.g.,* Ala. Code § 8-8-8 ("All contracts, express or implied, for the payment of money … bear interest from the day such money … should have been paid."); *Goolesby v. Koch Farms, LLC*, 955 So.2d 422, 429 (Ala. 2006) ("Prejudgment interest may be available in a breach-of-contract case … if damages were reasonably certain at the time of the breach."); *Lapeyrouse Grain Corp. v. Tallant*, 439 So.2d 105, 111-12 (Ala. 1983) (opining that Alabama law has allowed prejudgment interest on damages for breach of contract since at least 1852, and that "the proper applicable interest rate is the legal rate – 6%"); *First Alabama Bank of Montgomery, N.A. v. First State Ins. Co.*, 899 F.2d 1045, 1066 n.11 (11th Cir. 1990) (observing that "the Alabama Supreme Court has held that the legal rate of interest of 6% … applies to awards of prejudgment interest").

On this issue, it is Kennedy's turn to tilt at windmills and crash headlong into an unyielding mass of unfavorable precedent. The law, both in Alabama and elsewhere, is crystal clear that a creditor's refusal to accept tender of payment terminates the debtor's duty to pay interest, fees, costs and other incidental expenses. *See, e.g., Haberman v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 401, 408 (5th Cir. 1955) (tender rejected by creditor "cuts off interest and the right to costs from the date of tender …. This is not unreasonable, since a tender would amount, by definition, to complete performance if it were accepted. Only the obligee, not the obligor, is to blame that the obligation is not then fully performed."); *McCalley*, 8 So. at 159 (tender refused by creditor "releases [debtor] from the payment of the interest subsequently accruing"); Ala. Code § 7-3-603(c) ("If tender of payment of an amount due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay interest after the due date on the amount tendered is discharged.").[23] One commentator succinctly explained the rationale for this rule as follows: "It is the creditor's fault that the creditor is deprived of the use of the money. Consequently, the creditor has no right to interest beyond the due date or to other damages." 13 *Corbin on Contracts*, § 67.6 (rev. ed.).

---

[23]    *See also Malan*, 247 P.3d at 1228 (where creditor refused to accept tender, "the debtor was relieved from liability for the consequences of nonpayment other than the debt, such as interest on the debt"); *Carder Buick-Olds Co. v. Wooten*, 308 S.W.3d 156, 159 (Ark.App. 2009) ("A creditor cannot continue to demand interest after refusing to accept payment in full."); *Saunders v. Equifax Information Services, L.L.C.*, 2006 WL 2850647, *5 (E.D. Va. Oct. 3, 2006) (creditor's refusal to accept debtor's tender of payments means that creditor "could not assess additional interest, levy a late payment penalty, or declare the loan in default"); *Strickland v. Coleman*, 824 S.W.2d 188, 193 (Tex.App.-Hous. 1991) ("Tender of the amount due and the subsequent refusal of that tender relieved [debtor] of the liability for the subsequent interest, costs and attorney's fees."); *Litwak v. Wolkenberg*, 515 N.Y.S.2d 559, 560 (N.Y.A.D. 2 Dept. 1987) ("[i]t is well settled … that the unwarranted refusal of the tender operates to terminate all incidents of the obligation, such as interest"); *Guaranty Bank*, 632 S.W.2d at 340 (creditor's refusal of tender of sums due relieves debtor "of liability for interest, costs and attorney's fees"); *Still*, 98 Cal.Rptr. at 417 ("When a party makes a tender of full payment to the holder of a promissory note when or after it is due, he is discharged to the extent of all subsequent liability for interest, costs and attorney's fees."); 28 *Williston on Contracts*, § 72:45 (4th ed.) ("a valid, legally effective tender by the debtor, even though it is not accepted by the creditor and thus does not discharge the debt, does have the effect of discharging the debtor from liability for what might be called accessorial or incidental obligations, such as interest and other costs, that are related to the principal obligation").

Notwithstanding this veritable avalanche of authority bolstering the proposition that he cannot collect ancillary fees and charges on the Note because of his own wrongful conduct in rejecting BI/Boles' tender, Kennedy offers a series of arguments for the proposition that those categories of damages are properly awarded in this case, to-wit: (i) defendants are judicially estopped from contesting liability for incidental charges on the Note; (ii) the *Haberman* line of authorities is distinguishable because this case involves a prepayment tender rather than a tender upon maturity; and (iii) the equities favor allowing plaintiff to recover those incidental charges. The Court will address each of these contentions in turn.

First, Kennedy invokes the doctrine of judicial estoppel and maintains that defendants are estopped from challenging their liability for a late fee, attorney's fees and prejudgment interest in this case. "Judicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process." *Stephens v. Tolbert*, 471 F.3d 1173, 1177 (11th Cir. 2006) (citations omitted). "The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) (citation omitted). In deciding whether to apply judicial estoppel, courts traditionally examine the following factors: "(1) whether a later position asserted by a party was clearly inconsistent with an earlier position; (2) whether a party succeeded in persuading a court to accept an earlier position …; and (3) whether the party with an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Stephens*, 471 F.3d at 1177 (citation omitted).

Plaintiff's briefs are long on rhetoric that defendants' attempts to avoid liability for fees and interest on the Note are "diametrically opposite" to their position in the state court litigation (doc. 35, at 13); however, they are woefully short on concrete explanations and supporting facts. There is no indication, for instance, that BI/Boles ever represented to the state court that they <u>were</u> liable for prejudgment interest, attorney's fees, and late fees, only to deny same here. Nor did BI/Boles ever appear to deny responsibility to the state court for paying the principal to Kennedy upon maturity. So where, then, is the requisite "clear inconsistency" for judicial estoppel purposes? Kennedy apparently contends that BI/Boles have flip-flopped by arguing to the state court that Kennedy should not receive a judgment for the previously tendered principal plus prepayment penalty (inasmuch as the Note had not yet matured and BI/Boles' obligation to

pay had not ripened), whereas they argue here that Kennedy is not entitled to late fees, attorney's fees and interest after the Note matured because of their previous tender (and Kennedy's rejection of same). But there is no clear inconsistency between these positions. A debtor's liability for a rejected prepayment tender on an unmatured debt is a distinct issue from the debtor's liability for accessorial or incidental obligations to the debt following rejection of tender.[24] Any suggestion that BI/Boles could not avoid liability for the prepayment tender amount in state court without admitting liability for post-maturity interest, late fees and attorney's fees in this case appears to lack any basis in law or reason. Even if there were an inconsistency, Kennedy has not explained, and the Court does not perceive, how an unfair detriment would accrue to Kennedy if BI/Boles is permitted to argue in this case that plaintiff is not entitled to recover interest, late fees, and attorney's fees in connection with the unpaid principal on the Note; after all, Kennedy is being awarded a judgment in the amount of that unpaid principal. For these reasons, the Court in its discretion concludes that judicial estoppel has no application here.

Second, plaintiff attempts to distinguish the above line of authorities by asserting that "[n]one of these cases involved an interest-only note, a tender during the interest-only period, and a subsequent failure of that tendering party to pay the principal at maturity." (Doc. 35, at 7-8.) That may or may not be true. After all, there are myriad cases (only a fraction of which are cited herein) holding that a creditor's rejection of tender cuts off the debtor's liability for all

---

[24] Further peeling away the layers of the onion, it may be that plaintiff is trying to argue that the inconsistency lies in BI/Boles' argument in state court that the debt had not yet matured (such that the state court should not enter judgment against BI/Boles on that debt) and their reliance here on cases involving matured debts to avoid liability for ancillary expenses. (Doc. 35, at 8, 21-22.) Viewed through that prism, Kennedy's position would apparently be that it is unfair or misleading for BI/Boles to argue in state court that their debt to Kennedy had not matured, only to argue in federal court based on the premise that their debt to Kennedy had matured. Again, there is no "clear inconsistency" in BI/Boles' stance. The state court judgment was entered on November 3, 2008. By its terms, the Note did not mature until July 2, 2009. As such, for purposes of the state court litigation (including the appeal of the state court judgment), the Note had not matured. It was in no way misleading or inaccurate for BI/Boles to so argue. By contrast, the case at bar commenced when Kennedy filed a Complaint in federal court on August 27, 2010, more than a year after the Note had matured. It is thus entirely appropriate -- and in no way inconsistent or misleading -- for BI/Boles to rely in this case on decisional authority relating to matured debts, since that is what we now have. The circumstances here are simply not the stuff of judicial estoppel.

subsequent interest, late fees, and attorney's fees.  The Court (and, the undersigned strongly suspects, Kennedy) has not ascertained whether any of those opinions involve rejection of prepayment tender.  But it is unnecessary to do so.  Simply put, there is no reason why the distinction urged by Kennedy (even if it exists) should affect the result.  Again, this black-letter legal principle that a creditor who has refused tender cannot thereafter collect incidental obligations to the unpaid principal is rooted in the common-sense notion that the creditor could have avoided accrual of all such obligations simply by accepting tender, such that it is unfair to hold the debtor accountable for fees and expenses that never would have come to fruition but for the creditor's rejection of tender.  It is the creditor's fault that those fees and expenses accrued; therefore, it is only proper to excuse the debtor from paying them.  This reasoning holds equally true whether the tender occurs before maturity (as it did here) or whether it occurs after maturity (as it did in at least a portion of the cited authorities).[25]

In the factual framework of this case, Kennedy would have received the entire $3.33 million in principal back in June 2005 had he simply accepted the payment tendered by BI at that time, as the Note required Kennedy to do.  It would defy logic and common sense to say that Kennedy can reject that prepayment tender for no good reason, then proceed to charge BI/Boles prejudgment interest on those funds (which Kennedy would have had in his possession earning interest for the last six years but for his own breach of the Note), a late fee for not paying those funds timely (which late fee never would have been triggered had Kennedy simply accepted the properly tendered prepayment funds in June 2005, as he was contractually obligated to do), and the attorney's fees he incurred in collecting the $3.33 million in principal (which, again, Kennedy never would have incurred had he simply accepted the tendered prepayment as the Note required him to do).  This logic is neither undermined nor even affected by the fact that BI/Boles proffered tender prior to the maturity of the Note, rather than upon maturity.  Either way, the clear policy justifications barring creditors from collecting interest, fees and other

---

[25]     In addition to failing to explain why the timing of the tender rejection should matter for purposes of determining the debtor's liability for incidental obligations, Kennedy does not point to a single case authority, commentator or treatise that has ever suggested that this timing issue should make any material difference to the analysis.  By all appearances, then, Kennedy's argument is cut from whole cloth, with neither authoritative support nor persuasive reasoning to back it up.

incidental charges after rejecting tender remain in full force and effect. In short, the distinction urged by Kennedy is one that, even if valid as a factual matter, would make no conceivable difference to the reasoning or result.

Third, Kennedy appeals to equitable principles, arguing that if this Court excuses BI/Boles from paying late fees and post-maturity interest, "a truly offensive and inequitable result would obtain" because defendants would receive "an interest-free unlimited grace period on their admitted $3.33 million obligation to pay Kennedy," even as defendants' $3.65 million judgment against Kennedy continues to accrue interest at the statutory rate of 12%. (Doc. 35, at 12 n.19 & 14 (footnote omitted).)[26] Kennedy is wrong. Again, the only person he has to blame for not having the $3.33 million principal amount in his hands as of the maturity date of the Note is himself. The Note granted BI the contractual right to prepay the principal amount, and BI availed itself of that right. Yet Kennedy refused to accept the tender. The consequences of Kennedy's decision were that (i) he has not had use of the principal following the July 2009 maturity of the Note, (ii) he has incurred attorney's fees in a protracted legal battle with BI/Boles over the Note, and (iii) the principal went unpaid. Given these circumstances, it is certainly not inequitable to prohibit Kennedy from shifting to BI/Boles the financial responsibility for the direct, foreseeable consequences of his own unwise decision (which the state court conclusively

_____

[26] Not content with this dramatic statement, Kennedy ratchets up the rhetoric even further by asserting that to excuse BI/Boles from paying interest on the principal would be "grossly inequitable and contrary to the terms of the note, the Supreme Court's opinion in the state court litigation, the law of tender, and general Alabama law that interest accrues from the date of breach of a contract to pay money." (Doc. 35, at 12 n.19.) In making such a broad, sweeping proclamation of unfairness, plaintiff conveniently ignores the following items, among others: (i) the terms of the Note expressly permitted BI to prepay the principal debt, yet Kennedy blocked it from doing so by refusing to accept tender in June 2005, apparently because of a misguided desire to shake down BI for more money; (ii) the Supreme Court's opinion in the state court litigation expressly stated that "[w]e conclude that BI owed no interest payments to Kennedy after Kennedy rejected BI's prepayment tender," *Kennedy II*, 53 So.3d at 70; (iii) it is a fundamental tenet of the law of tender that the refusal of tender by a creditor "releases [debtor] from the payment of the interest subsequently accruing," *McCalley*, 8 So. at 159; and (iv) an Alabama statute specifically provides that "[i]f tender of payment of an amount due on an instrument is made …, the obligation of the obligor to pay interest after the due date on the amount tendered is discharged." Ala. Code § 7-3-603(c). Given these circumstances, plaintiff's shrill accusation that BI and Boles are seeking a result that is impermissible under the equities, the Note, the state court judgment, the law of tender, and Alabama statutory law is inaccurate across the board.

deemed to be in breach of the Note) by saddling them with prejudgment interest, late fees and attorney's fees that exist only because of Kennedy's breach.[27]

For all of the foregoing reasons, the Court is of the opinion that, based on the undisputed facts in the pleadings, defendants are entitled to judgment as a matter of law on plaintiff's claims to recover late fees, prejudgment interest, and attorney's fees on the Note. Under well-established law, Kennedy's refusal to accept BI/Boles' tender of the principal amount in June 2005 extinguished his contractual right to recover interest, fees or other incidental amounts over and above the principal. Therefore, plaintiff's claims in this action are **dismissed** pursuant to Rule 12(c), Fed.R.Civ.P., insofar as they involve requests for award of prejudgment interest, attorney's fees or late fees.[28]

---

[27]     In one of its briefs, Kennedy scoffs at this reasoning as "superficial logic" that "quickly breaks down." (Doc. 37, at 4.) But this "superficial logic" lies at the core of the principle that Alabama and other jurisdictions have long recognized that rejection of tender cuts off a debtor's obligations to pay interest and other incidental fees and expenses. Equally unpersuasive is Kennedy's attempt to flip the rationale against BI/Boles by stating that if he had accepted their tender, BI/Boles would have been out $3.513 million that they would have borrowed from a bank to fund the tender. In Kennedy's view, then, BI/Boles were going to pay interest on the tender amount anyway, so they might as well pay it to him since they do not have to pay it to the bank (because the tender loan never happened). Given the millions in losses sustained by BI/Boles as a result of Kennedy's refusal of tender, the Court cannot endorse Kennedy's implicit suggestion that he did BI/Boles a favor by rejecting their tender, and that he therefore is entitled to a windfall of interest payments for his own contractual breach. More importantly, Kennedy's argument once again proceeds in wholesale disregard of abundant authority standing for the proposition that a debtor does not have to continue paying interest after the creditor rejects tender.

[28]     Before leaving this topic, the Court makes one point of clarification. The parties expend a great deal of energy in their briefs sparring over whether Kennedy's request for prejudgment interest is barred by principles of collateral estoppel. Defendants insist that it is, given the Alabama Supreme Court's unambiguous pronouncement that "BI owed no interest payments to Kennedy after Kennedy rejected BI's prepayment tender." *Kennedy II*, 53 So.3d at 70. On this point, at least, plaintiff has the better argument. *See* doc. 35, at 5 ("Issues relating to the post-maturity breach of the note were not litigated or resolved in the prior action."). Recall that under Alabama law, collateral estoppel requires, *inter alia*, that the issue "must be identical to the one involved in the previous suit," and that resolution of the issue "must have been necessary to the prior judgment." *Flexible Products*, 915 So.2d at 45. The parties had no occasion to litigate in the state court action, and the Alabama courts had no occasion to decide, whether BI and Boles were responsible for making any post-maturity interest payments under the Note. That is because the state court judgment was entered <u>before</u> the Note's maturity date. The Alabama Supreme Court recognized as much with its reference to "future events" that might (Continued)

-19-

## C.    Proposed Amendment of Complaint.

The Court next considers plaintiff's assertion that if BI/Boles are excused from paying "the principal, late fee, prejudgment interest and attorney's fees …, Kennedy should be afforded leave to amend to claim judgment based on BI's $3.513 million tender with prejudgment interest thereon since November 3, 2008." (Doc. 32, at 15.)[29]  As set forth above, the Court has found that plaintiff is entitled to a judgment on the pleadings that defendants must pay the principal amount of the Note, but that defendants are entitled to judgment on the pleadings as to plaintiff's claims for award of late fees, attorney's fees, and prejudgment interest on the Note.  Given these circumstances and plaintiff's formulation of the conditions under which he wishes to amend his Complaint (*i.e.*, only if BI/Boles are excused from paying "the principal, late fee, prejudgment interest and attorney's fees"), it is not clear whether he wishes to pursue this amendment at this time.  Nonetheless, it is reasonable to assume that he does, inasmuch as the amendment, if granted, might allow him to recover the 5% prepayment penalty and prejudgment interest that this Court has disallowed under Kennedy's primary theory of recovery.

The proposed amendment is predicated on a quite different legal theory than Kennedy's existing claim against BI/Boles.  The existing claim is that BI/Boles breached the Note and

_____

warrant entry of judgment in Kennedy's favor on the Note.  *Kennedy II*, 53 So.3d at 74 n.6. Simply put, the issue before the state courts was whether BI/Boles owed interest on the Note up to the November 2008 judgment, not whether BI/Boles would owe interest on the Note after its July 2009 maturity date if BI/Boles elected not to pay the principal then.  As Kennedy is now asking for an award of prejudgment interest running from the date of maturity of the Note through the present, that issue is not identical to the one involved in the state court proceeding and was not necessarily decided therein.  The Alabama courts had no occasion to determine BI/Boles post-maturity obligations because the Note's maturity date had not happened yet and they did not know whether BI/Boles would or would not pay the principal amount at that time. (That said, if Kennedy were seeking an award of prejudgment interest in this case predating the Note's maturity date, which he does not appear to be doing, such a claim would plainly be foreclosed by the doctrine of collateral estoppel / issue preclusion.)

[29]      For plaintiff to state in briefing Rule 12(c) issues that he requests leave to amend the Complaint if certain of those issues are resolved against him is procedurally unconventional, but not improper.  The Court notes that plaintiff has separately filed a Motion for Leave to Amend Complaint (doc. 22), in which he requests judgment for the full amount of defendants' June 2005 tender of $3.513 million (consisting of the $3.33 million principal amount, plus accrued interest and a 5% prepayment penalty) as well as prejudgment interest on same.

Guaranty Agreement by not making the July 2009 balloon payment. As already discussed, this claim was not available to Kennedy in the state court action (and therefore is not foreclosed by collateral estoppel or res judicata) because that action reached final judgment before the Note's maturity date, when that balloon payment became due. Kennedy's proposed new claim is that BI/Boles' prepayment tender in June 2005 constituted an irrefutable admission of liability and irrevocably obligated them to pay the entire amount of that tender to Kennedy, irrespective of maturity dates under the Note.[30]

Notwithstanding the liberal standard for amendment of pleadings prescribed by Rule 15(a)(2), Fed.R.Civ.P., leave is properly denied when the proposed amendment would be futile. *See, e.g., Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) ("A proposed amendment may be denied for futility when the complaint as amended would still be properly dismissed.") (citation and internal quotation marks omitted); *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) ("a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile"). After careful review of the parties' briefs, not only on the Rule 12(c) motions but also their related filings concerning Kennedy's proposed amendment, the Court agrees with BI/Boles that the amendment sought by plaintiff is properly denied on futility grounds.

The problem with plaintiff's attempt to inject a tender-as-admission claim into this case is that (unlike his claim for post-maturity breach of the Note) such a cause of action necessarily accrued prior to the state court litigation (*i.e.*, at the time of tender in June 2005). Moreover, Kennedy specifically and unsuccessfully argued a tender-as-admission theory in the state court action, where he sought a ruling that offset the amount of BI/Boles' tender against the judgment in their favor. That claim was actually litigated in state court.[31] And the following passage from the Alabama Supreme Court's opinion demonstrates that the claim was necessarily decided:

---

[30]     There is a line of Alabama authority that lends at least superficial support to Kennedy's position by deeming tender to be an admission of liability for the full amount of the tender. *See, e.g., Hardegree v. Riley*, 122 So. 814, 815 (Ala. 1929) ("The plea of tender was an admission of indebtedness."); *Southern Ry. Co. v. Slade*, 68 So. 867, 869 (Ala. 1915) ("A 'tender' is ordinarily an admission of liability for the amount tendered.").

[31]     Plaintiff cannot seriously dispute this point. After all, before the state trial court, Kennedy's counsel stated the following in oral argument on January 13, 2009: "the 3.65 million dollar judgment should be reduced by the amount of the tender, 3.513, that was made by Mr. (Continued)

"Kennedy further argues that the [trial court's] November 3, 2008, order improperly allows BI and Boles to benefit from the prepayment tender *and* to avoid its burden because, he argues, the order does not enter a judgment against BI and Boles for the prepayment-tender amount. … This argument is misguided because our affirmance of that portion of the trial court's judgment returning interest payments to BI and Boles is based upon a finding that *Kennedy breached the note* by rejecting BI's prepayment tender. … BI did not at that juncture breach the note and Boles did not at that point breach his alleged guaranty to pay BI's obligation on the note. Therefore, Kennedy is not entitled to a judgment against BI or Boles in this proceeding in the absence of a breach."

*Kennedy II*, 53 So.3d at 71.

The application of the doctrine of collateral estoppel / issue preclusion to this claim is readily apparent. As noted, the elements of collateral estoppel are as follows: "(1) an issue identical to the one litigated in the prior suit; (2) that the issue was actually litigated in the prior suit; (3) that resolution of the issue was necessary to the prior judgment; and (4) the same parties." *Bonner v. Lyons, Pipes & Cook, P.C.*, 26 So.3d 1115, 1121 (Ala. 2009) (citation omitted). All of these criteria are satisfied here. Kennedy raised the same tender-as-admission claim in state court that he is seeking to interject here. That issue was actually litigated in state court, and was necessary to the underlying judgment (inasmuch as the state courts' rejection of

---

Boles in the summer of 2005. … [I]n all events, the tender should be made good now, with a setoff of the amount of the tender against the 3.65 million dollars." (Doc. 25, Exh. B, at R-407, R-408.) Likewise, a memorandum that Kennedy filed in the Alabama Supreme Court recited the very arguments and authorities on which he relies here. (Doc. 25, Exh. C.) In that brief, Kennedy argued that the state court's ruling was in error because it overlooked that "[t]he legal effect of a plea of tender is an irrebuttable admission of indebtedness to the extent of the tender, regardless of the final outcome of the action." (Doc. 25, Exh. C, at 1 (footnote omitted)). He likewise contended that "Kennedy's entitlement to judgment for $3.513 million arises, as a matter of law, from BI's defense of tender and admission of liability therefor." (*Id.* at 2.) By plaintiff's own admission, "[i]mmediately following entry of judgment Kennedy raised in the trial court his entitlement to judgment for the tender." (*Id.* at 3.) He repeatedly argued in written submissions to the state court that "Kennedy is entitled to judgment … for the $3,513,000 prepayment tender …." (*Id.* at 4.) Kennedy continued that "BI was liable via admission for the amount of the valid tender" and that "tender 'irrebuttably' admits liability for the amount tendered." (*Id.* at 5 & n.5.) Kennedy specifically asked the Alabama Supreme Court to hold "that BI's tender admitted liability for the amount tendered and, as a consequence, judgment for Kennedy of $3.513 million is necessarily implied in the November 3, 2008 judgment." (*Id.* at 13.) Unquestionably, then, the issue of BI/Boles' liability for the June 2005 tender was actually litigated in the state court action.

said claim resulted in Kennedy not receiving the requested credit for $3.513 million in the state court judgment). And the parties are identical here. Plaintiff has made no convincing argument for why he would not be collaterally estopped from presenting the same tender-as-admission issue in this case that he unsuccessfully raised in state court.[32]

For all of these reasons, the Court finds that Kennedy's proposed amendment of his Complaint to add as Count II a claim seeking judgment against BI/Boles in the amount of their June 2005 tender is barred by principles of collateral estoppel. Having unsuccessfully litigated that very issue in the related state court proceedings, Kennedy cannot take another stab at it in federal court now.[33] Accordingly, the Court will not entertain any claim or argument by plaintiff

---

[32] To be sure, Kennedy's reply brief filed in support of his Motion for Leave to Amend Complaint includes a section labeled, "Neither Res Judicata Nor Collateral Estoppel Bar the Original Complaint or the Proposed Amendment" (doc. 26, at 5.) However, the vast majority of this section addresses the inapplicability of preclusion principles to Kennedy's already-pleaded claim of post-maturity breach of the Note. For reasons previously set forth herein (especially the fact that the Note had not matured as of the entry of the state court judgment, such that no post-maturity breach of the Note had yet occurred or could have been litigated or decided in the state court action), the Court agrees that Kennedy is not barred from raising such a claim herein. But the tender-as-admission claim sits on a different footing because that claim rests on the June 2005 tender, rather than the maturity of the Note. Even in the above-referenced section of his reply brief, Kennedy skirts the issue of why collateral estoppel would not preclude his proposed amendment to the Complaint, where that claim was actually litigated and necessarily decided in the state court action. (*See* doc. 26, at 5-7.) And in briefing the Rule 12(c) Motions, in response to BI/Boles' direct statement that his proposed Count II is plainly barred by res judicata or collateral estoppel, Kennedy says nothing, except that "the Court need not consider Plaintiff's Motion for Leave to Amend." (Doc. 37, at 14.) Plaintiff thus persists with mixed messages as to whether he wants the Court to decide his motion to amend or not.

[33] Even if the argument could somehow be made that the question of whether Kennedy was entitled to a judgment (or a credit against BI/Boles' judgment) for the amount of the June 2005 tender was not actually presented in the state court proceedings, the claim would nonetheless be barred here by principles of res judicata / claim preclusion because it unquestionably could have been presented in that action. *See, e.g., Martin v. Cash Exp., Inc.*, --- So.3d ----, 2010 WL 3797636, *5 (Ala. Sept. 30, 2010) ("Under Alabama law, the essential elements of res judicata are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits.") (citations and internal quotation marks omitted); *Dairyland Ins. Co. v. Jackson*, 566 So.2d 723, 725 (Ala. 1990) (where all four elements of res judicata are present, "any claim that was or could have been adjudicated in the prior action is barred from further litigation"). Significantly, "[r]es judicata applies not only to the exact legal theories (Continued)

in this action that BI/Boles' tender of $3.513 million in June 2005 constituted an irrebuttable admission of liability and that Kennedy is entitled to judgment against them in that amount. The Motion for Leave to Amend Complaint (doc. 22) is **denied**.

### D. Setoff Issues.

To recapitulate, BI and Boles last year obtained a state court judgment against Kennedy in the amount of $3,650,000 to compensate them for the loss of resale value of the Property as a consequence of Kennedy's breach of the Note. In this federal action, the undersigned has found that Kennedy is entitled to judgment on the pleadings in the amount of $3,330,000 to compensate Kennedy for BI/Boles' breach of the Note (and Guaranty Agreement, in Boles' case) by not making the required principal payment when the Note matured in July 2009. The undersigned has also found that BI/Boles is entitled to judgment on the pleadings on Kennedy's claims for damages in excess of the Note's principal amount (*i.e.*, late fees, attorney's fees, and prejudgment interest). So defendants have a state court judgment against plaintiff in the amount of $3.65 million that has been accruing postjudgment interest at Alabama's statutory rate of 12%. *See* Ala. Code § 8-8-10. Plaintiff now has a federal court judgment against defendants in the amount of $3.33 million that will also accrue postjudgment interest, albeit at the much lower federal rate. *See* 28 U.S.C. § 1961(a). The parties are in agreement that plaintiff is entitled to a credit on the state court judgment in the amount of the $810,625 in supersedeas bond proceeds collected by BI/Boles on July 13, 2010.

Notwithstanding the foregoing, the parties engage in extensive debates in their Rule 12(c) briefs concerning setoff issues, including (a) whether Kennedy is entitled to a right of setoff at all; (b) if so, how that setoff should be calculated; and (c) the overall amount of any setoff and the net total of any judgment that may be entered. The parties' arguments are difficult to follow because they contemplate various scenarios as to BI/Boles' indebtedness to Kennedy that were speculative at the time of briefing because the parties did not know how the Court would resolve other liability issues in this Order. Moreover, it is not entirely clear whether, in the wake of

---

advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts." *Gatlin v. Joiner*, 31 So.3d 126, 133 (Ala.Civ.App. 2009) (citations omitted).

entry of judgment against BI/Boles for $3.33 million in this matter, any reasonable, good-faith grounds for disagreement as to setoff issues remain.[34]

Rather than parsing the parties' rhetoric and attempting to ascertain which of their setoff arguments have continuing vitality and which have been mooted by intervening developments, the parties are hereby **ordered** to proceed as follows: The parties must meet and confer in good faith to endeavor to resolve all setoff-related issues and disputes between them, and must submit a joint status report to the Court by no later than **June 28, 2011**. Prior to that date, the parties must contact Magistrate Judge Cassady's chambers to explore whether and, if so, how he might assist them in facilitating a compromise of these lingering setoff-related issues. If those discussions are not successful in resolving all setoff-related issues, then, on or before **July 5, 2011**, plaintiff must file a memorandum of law setting forth, at a minimum, the following: (i) the specific setoff issues that remain in dispute; (ii) if plaintiff is asking this Court to decide any computational, interest-accrual, or collection issues pertaining to the state court judgment (as opposed to the federal court judgment), the legal basis for directing that request to this Court rather than the court that entered the judgment; and (iii) specific legal and factual support for each disputed setoff-related issue that plaintiff is asking this Court to resolve. Defendants may file a response on or before **July 12, 2011**, after which time the undersigned will take all setoff related issues under submission.

## III.    Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1.    Plaintiff's Motion for Judgment on the Pleadings (doc. 31) is **granted** insofar as plaintiff seeks a judgment that defendants are liable to him in the amount of $3,300,000 for failing to pay the Note at maturity, but is **denied** insofar as

---

[34]    Neither side had conducted itself in a particularly laudatory manner with regard to setoff issues to date. For his part, plaintiff at one time refused an offer by defendants to accept the cancelled Note in partial satisfaction of the state court judgment, which is the centerpiece of the relief he seeks in this lawsuit. For their part, defendants at one time offered to accept the cancelled Note in partial satisfaction of the state court judgment, then changed their minds and refused to do so. To the casual observer, the conduct of both sides appears motivated more by a desire to punish the opposition and jockey for position than by any interest in attaining a good-faith resolution to a nearly six-year old quarrel that appears to have a vast middle ground from which a mutually fair compromise could be struck.

plaintiff seeks a judgment that defendants are liable for prejudgment interest, attorney's fees, and late fees;

2. Defendants' Motion for Judgment on the Pleadings (doc. 9) is **granted** insofar as defendants seek dismissal of plaintiff's claims for recovery of prejudgment interest, attorney's fees, and late fees, but is **denied** insofar as defendants seek dismissal of plaintiff's claims for recovery of the principal amount of the Note;

3. Both Motions for Judgment on the Pleadings remain pending insofar as they seek Rule 12(c) relief on setoff issues;

4. Plaintiff's Motion for Leave to Amend the Complaint (doc. 22) is **denied** as futile;

5. With regard to the pending setoff issues, the parties are **ordered** to meet and confer in good faith to endeavor to resolve such issues, and to submit a joint status report concerning the progress of such negotiations on or before **June 28, 2011**. If *bona fide*, good faith disputes as to such issues remain, then plaintiff is **ordered** to file a supplemental memorandum of law identifying and addressing such issues on or before **July 5, 2011**. If such a memorandum is timely filed, then defendants are **ordered** to file a supplemental response memorandum on or before **July 12, 2011**, after which time the Court will take under submission all remaining setoff issues joined in this action; and

6. The Court will enter a separate judgment memorializing defendants' liability to plaintiff for $3.33 million in unpaid principal due and owing pursuant to the Note and Guaranty Agreement, as well as the dismissal of plaintiff's claims for incidental obligations under the Note.

DONE and ORDERED this 7th day of June, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE